1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BGH HOLDINGS, LLC et al.,

Plaintiffs,

v.

DL EVANS BANK,

Defendant.

Case No. C18-1408RSL

ORDER REGARDING
PLAINTIFFS' RESPONSE
TO ORDER TO SHOW
CAUSE AND PLAINTIFFS'
MOTION TO DISMISS
DEFENDANT'S
COUNTERCLAIMS

This matter comes before the Court on (1) plaintiffs' response to the Court's Order to Show Cause (Dkt. # 109), and (2) plaintiffs' "FRCP 12(b)(1) Motion to Dismiss Defendant's Counterclaims and Third-Party Claims for Lack of Subject Matter Jurisdiction" (Dkt. # 132). Having reviewed the memoranda and exhibits submitted by the parties and the remainder of the record, and conducted oral argument, the Court finds as follows:

## I.     BACKGROUND

On January 13, 2010, defendant DL Evans Bank (the "Bank") obtained a default judgment against plaintiff Henry Dean in a Blaine County, Idaho court in the amount of $1,063,503.16 ("Idaho Default Judgment"). See Dkt. # 32-1 (Ex. A). On October 4, 2010, the Bank domesticated the Idaho Default Judgment in King County Superior Court of Washington.

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 1

1  See id. (Ex. B). The Bank renewed and extended the Idaho Default Judgment in the Blaine

2  County District Court on January 5, 2015. Id. (Ex. C). The Bank then renewed and extended the

3  foreign Idaho Default Judgment in King County Superior Court on January 23, 2015. Id. (Ex.

4  D). On August 2, 2018, the Bank sought and obtained a writ of execution in the King County

5  Superior Court. Dkt. # 5-1 (Ex. A). In August 2018, the King County Sheriff levied upon the

6  writ of execution, allegedly entering plaintiffs' residence to seize personal property including

7  certain stock shares and stock options, as well as personal, business, and legal records. Dkt. # 4

8  ("Am. Compl.") at ¶ 2.6. Plaintiffs subsequently filed this federal lawsuit against the Bank,

9  bringing claims under 42 U.S.C. § 1983 ("Section 1983") for violations of their Fourth

10  Amendment and Fourteenth Amendment rights (id. at ¶¶ 4.1–5.15), for conversion (id. at ¶¶

11  6.1–6.2), for unjust enrichment (id. at ¶¶ 7.1–7.2), and for declaratory and injunctive relief

12  regarding the right of execution under the Idaho Default Judgment (id. at ¶¶ 8.–8.2). The Bank

13  raised counterclaims against plaintiffs for declaratory judgment regarding the existence and

14  validity of the debt (Dkt. # 18 at ¶¶ 30–44), declaratory judgment regarding enforcement of the

15  Idaho Default Judgment in Washington (id. at ¶¶ 45–52), fraudulent transfers (id. at ¶¶ 53-77),

16  and injunctive relief to prevent further fraudulent transfers (id. at ¶¶ 78–82).

17  On May 23, 2019, the parties filed cross-motions for partial summary judgment. See

18  Dkts. # 31, 33. Upon review of the parties' cross-motions and the underlying complaint, the

19  Court viewed "the gravamen of plaintiffs' complaint as a challenge to the King County Superior

20  Court's issuance of a writ of execution on a state law judgment," and highlighted that the "Court

21  is precluded from reviewing that judgment and its execution" per the Rooker-Feldman doctrine.

22  Dkt. # 107. "Essentially, the Rooker-Feldman doctrine bars 'state-court losers complaining of

23  injuries caused by state-court judgments rendered before the district court proceedings

24  commenced' from asking district courts to review and reject those judgments." Henrichs v.

25  Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007) (quoting Exxon Mobil Corp. v. Saudi

26

27  ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
   TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
28  DISMISS DEFENDANT'S COUNTERCLAIMS - 2

1   Basics Indus. Corp., 544 U.S. 280, 284 (2005)). The Court addressed each of plaintiffs' causes

2   of action one-by-one and ordered plaintiffs to show cause why all but one of the causes of action

3   should not be dismissed for lack of subject matter jurisdiction consistent with the Rooker-

4   Feldman doctrine. The only cause of action the Court construed as permitted under the Rooker-

5   Feldman doctrine was plaintiffs' Section 1983 claim under the Fourth Amendment, and only to

6   the extent the claim "pertains to defendant's alleged conduct during the entrance and searching

7   of plaintiffs' residence," in "enforcing the writ of execution." Dkt. # 107 at 4.

8        Plaintiffs have since filed their response to the Court's Order to Show Cause, Dkt. # 109,

9   as well as a separate motion to dismiss the Bank's counterclaims for lack of subject-matter

10  jurisdiction. Dkt. # 132. The Court considers plaintiffs' response and motion, respectively,

11  below.

12  **II.     PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE (DKT. # 109)**

13       In their response to the Court's Order to Show Cause, plaintiffs argue that the Rooker-

14  Feldman doctrine does not apply to their claims because they are not asserting legal error by

15  Idaho or Washington courts, but rather "an affirmative independent legal wrong" by the Bank.

16  Dkt. # 109 at 2–3. "Rooker–Feldman prohibits a federal district court from exercising subject

17  matter jurisdiction over a suit that is a de facto appeal from a state court judgment." Kougasian

18  v. TMSL, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). Courts should construe a claim as a de

19  facto appeal only when a plaintiff seeks "relief from the state court judgment" *and* "asserts as

20  [plaintiff's] injury legal error or errors by the state court." Id. at 1140. "A plaintiff alleging

21  extrinsic fraud on a state court is not alleging a legal error by the state court; rather, he or she is

22  alleging a wrongful act by the adverse party." Id. at 1140–41.

23       Here, plaintiffs argue that the Court should not construe their claims as a de facto appeal

24  from the Idaho Default Judgment. See Dkt. # 109 (e.g., "Here, this Court is not being called

25  upon to directly remedy an erroneous decision by the Idaho State Court that entered the Idaho

26

27  ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
    TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
28  DISMISS DEFENDANT'S COUNTERCLAIMS - 3

1   Default Judgment," "This is not a direct appeal of the Idaho Default Judgment," and "Plaintiffs
2   are not requesting this Court review the Idaho Default Judgment"). However, plaintiffs pled
3   claims based on the alleged unlawfulness of the writ of execution issued by the King County
4   Superior Court in 2018 ("the King County writ"), not based on alleged extrinsic fraud used in
5   procuring the Idaho Default Judgment. Thus, plaintiffs' focus on the Idaho Default Judgment is
6   misplaced.

7       Plaintiffs contend that the Court is being asked to determine the following:

8       (A) whether the non-governmental Defendants committed extrinsic fraud when
9       they lied to the Idaho State Court by stating that after using due diligence they
        could not locate Plaintiff Henry Dean and served him by publication thereby
10      depriving him of meaningful notice and opportunity to be heard; and (B) whether
        the non-governmental Defendants knowingly and unlawfully utilized a
11      Washington state court procedure and this State's law enforcement agencies to
12      unlawfully search Defendants Henry Dean's and Ginger Atherton's residence and
        seize their personal property.
13

14  Dkt. # 109 at 2. First, with respect to the alleged fraud upon the Idaho State Court, nowhere in
15  the causes of action set forward in the complaint do plaintiffs base their claims on such fraud.
16  While the complaint refers to the Bank as having "misrepresented facts in its motion seeking
17  service by publication" before the Idaho court, Am. Comp. ¶ 3.3, plaintiffs acknowledged the
18  Bank's position could be construed as being "calculated not to provide notice" or, more
19  charitably, as a lack of diligence. Am. Compl. ¶ 3.21. Plaintiffs' allegations in the complaint
20  regarding the wrongfulness of the Bank's actions center not on the Idaho Default Judgment
21  being invalid due to fraud, but rather on the Bank using the Idaho Default Judgment after it
22  allegedly expired. See Am. Compl. ¶ 4.23 ("The Bank acted under color of state law by utilizing
23  a 2010 Idaho Default Judgment on which rights of execution had long ago expired against
24  personal property to wrongfully and unlawfully obtain the aid and power of the King County
25  Superior Court and King County Sheriff . . . ."), ¶ 5.15 ("Thus, while the Idaho Default
26
27  ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
28  TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
    DISMISS DEFENDANT'S COUNTERCLAIMS - 4

Judgment expired as to personal property, the Bank has been able to execute on and deprive Plaintiffs of their personal property by utilizing and receiving assistance from the machinery of the State of Washington . . . ."), ¶ 8.2 ("Plaintiffs seek declaratory judgment by the Court that the right of execution has long since expired under the Idaho Default Judgment as of January of 2015 and the Bank has improperly seized property belonging to Plaintiffs in unlawful reliance on the expired judgment.").

With respect to the King County writ, plaintiffs assert that the Bank "utilized the Washington garnishment statute to obtain a writ of [execution], served instructions to levy on the King County Sheriff, and unlawfully seized the [plaintiffs'[1]] property under color of state law," and it was the Bank's actions, not the "state court's erroneous decisions" that caused plaintiffs' damages. Dkt. # 109 at 3. Plaintiffs state that they are requesting that the Court "construe Washington law to not allow a judgment creditor to obtain greater collection rights just because the creditor registered its judgment in Washington." Dkt. # 109 at 5. Ultimately, success on plaintiffs' claims—with one partial exception[2]—would require the Court to reject the validity of the King County writ, and not on the basis of fraud upon the court. Plaintiffs' complaint effectively asserts legal error by the King County Superior Court in that it indicates that the King County Superior Court was legally wrong to issue the writ of execution because, according to plaintiffs' contested interpretation of the law, the Idaho Default Judgment had already expired. Am. Compl. ¶ 5.14 (referring to the "Idaho Default Judgment [as having] long

---

[1] Plaintiffs referred to the unlawful seizure of "Defendants'" property and to a writ of "garnishment," Dkt. # 109 at 3, but the Court presumes these were errors.

[2] As stated above, the only cause of action the Court previously construed as permitted under the Rooker-Feldman doctrine was plaintiffs' Section 1983 claim under the Fourth Amendment, and only to the extent the claim "pertains to defendant's alleged conduct during the entrance and searching of plaintiffs' residence," in "enforcing the writ of execution." Dkt. # 107 at 4.

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 5

expired as to writs of execution"), ¶ 8.2 (seeking declaration that "the right of execution has long since expired under the Idaho Default Judgment" and that the Bank "improperly seized property belonging to Plaintiffs in unlawful reliance on the expired judgment"); see also Dkt. # 33 (plaintiffs' motion for summary judgment). Plaintiffs have failed to explain how their claims can succeed without asking this Court to determine whether the King County Superior Court validly issued the 2018 writ of execution,[3] an inquiry this Court cannot undertake for the reasons explained in-depth in the Court's Order to Show Cause. See generally Dkt. # 107; see also Ezor v. McDonnell, No. CV 19-8851-JVS (AGR), 2020 WL 6468448, at *5 (C.D. Cal. Oct. 21, 2020), report and recommendation adopted, No. CV 19-8851-JVS (AGR), 2020 WL 7479622 (C.D. Cal. Dec. 18, 2020) (concluding that plaintiff failed to sufficiently allege extrinsic fraud by defendants, and holding that "to the extent Plaintiff contests the validity of the judgment in the probate case and of the writ of execution and related orders issued by the Superior Court, Rooker-Feldman bars subject-matter jurisdiction over his claims"); Muhammad v. Reese L. Grp., No. 16CV2513-MMA (BGS), 2017 WL 4557194, at *5 (S.D. Cal. Oct. 12, 2017) (concluding that Rooker-Feldman barred the district court from reviewing a challenge based on a state writ of execution where adjudicating the claim would undercut that state court judgment).

Although plaintiffs may retain their first cause of action to the extent it pertains to the Bank's alleged conduct in enforcing the writ of execution during the entrance and search of plaintiffs' residence, the remainder of plaintiffs' claims must be DISMISSED for lack of subject matter jurisdiction.

---

[3] Notably, the Bank is pursuing an action on its judgment in Idaho, and the Idaho state court recently summarized the instant action in this District as "a federal challenge of a state court action." Dkt. # 148-1 at 10. Plaintiffs request that the Court defer any Rooker-Feldman doctrine ruling until two motions for summary judgment in the Idaho state court litigation are decided, Dkt. # 147 at 1, but deferring this ruling makes little sense when that litigation would not address the King County writ.

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 6

1
2

### III.   PLAINTIFFS' MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS (DKT. # 132)

3

Plaintiffs moved to dismiss the Bank's fraudulent transfer counterclaims for lack of

4   subject-matter jurisdiction.[4] The Bank contends that the Court has diversity jurisdiction over the

5   counterclaims, and even if it did not, that supplemental jurisdiction would apply.

6   **A.   Diversity Jurisdiction**

7

With respect to diversity jurisdiction, plaintiffs argue that there is no diversity because an

8   entity known as Karma Power, LLC ("Karma")—a non-diverse entity[5]—is "either the real party

9   in interest or a partner or joint venturer with the Bank to collect the Judgment and share in the

10  collection expenses." Dkt. # 132 at 6. The Bank responds that the citizenship of non-parties like

11  Karma is irrelevant,[6] and the Bank contends that it is a real party in interest because it "holds the

12

13        [4] The Bank makes eight counterclaims in its amended answer. Dkt. # 18 ¶¶ 30–82 (declaratory

14  judgment (claims one and two), fraudulent transfers (claims three through seven), and injunction to
    prevent further fraudulent transfers (claim eight)). Plaintiffs' motion to dismiss appears to target only the

15  fraudulent transfer counterclaims. See, e.g., Dkt. # 132 at 1–2 (referring to the claims dealing with
    "fraudulently transfer[ring] shares"), 6 (referring to the Bank's "Fraudulent Transfer Claims"), 8

16  (referring to the Bank's "fraudulent transfer claims").

17        [5] The Bank filed a Supplemental Corporate Disclosure Statement providing that Karma "had an

18  interest in [the judgment against Henry W. Dean] at certain times." Dkt. # 90. The statement also
    identified Karma's members. Id. The Bank concedes that at least one member of Karma resides in

19  Washington (Mark Calvert). Dkt. # 137 at 9. The Bank is a citizen of Idaho. Am. Compl. ¶ 1.4. Plaintiffs
    and counterclaim defendants are citizens of Washington. Am Compl. ¶¶ 1.1–1.3; Dkt. # 18 at 11, ¶¶ 3–4.

20        [6] The Bank, in support of this argument, mischaracterizes the Court's prior statement related to

21  this issue. Plaintiffs previously filed a "Motion to Dismiss Added Parties for Failure to Serve," Dkt.
    # 27, and they filed a reply in support of that motion claiming that there were "issues related to diversity

22  jurisdiction." Dkt. # 64 at 6. The Court observed that plaintiffs' reply "belatedly and vaguely
    stated . . . that there is no subject matter jurisdiction over the Bank's state law fraudulent transfer claims

23  because there is no diversity jurisdiction." Dkt. # 71 at 5 n.3. The Court noted that plaintiffs' arguments
    pertained to Mark Calvert and Karma and that the Bank did not seek to add either to the action. Id. The

24  Court concluded that any "issues that plaintiffs have with the Bank's corporate disclosure are not
    relevant to these motions," referring to the motions the Court was considering in its Order, i.e.,

25  plaintiffs' "Motion to Strike Pleading" and "Motion to Dismiss Added Parties for Failure to Serve," and

26

27  ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER

28  TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
    DISMISS DEFENDANT'S COUNTERCLAIMS - 7

legal authority to prosecute all claims related to the Judgment," it has a financial interest in the outcome of the litigation, and it has spent "the *last decade* trying to enforce its judgment against Dean." Dkt. # 137 at 10–11. The Bank relies primarily on Lincoln Prop. Co. v. Roche, 546 U.S. 81 (2005), which provides that "if [a] named party's interest is real, the fact that other interested parties are not joined 'will not affect the jurisdiction of the [federal courts].'" Id. at 93 (quoting Little v. Giles, 118 U.S. 596, 603 (1886)).

Jurisdiction must rely upon the citizenship of "real and substantial parties to the controversy." Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980). "The general rule is that the citizenship of the real party in interest is determinative in deciding whether diversity jurisdiction exists" and "the presence of a nominal or formal party who is nondiverse is irrelevant for purposes of measuring the court's subject-matter jurisdiction." Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, 6A Federal Practice and Procedure § 1556 (3d ed., April 2021 Update). The Court must look to Washington law to determine whether the Bank may proceed as a real party in interest on its fraudulent transfer counterclaims. Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1094 (9th Cir. 2004). Pursuant to Washington law, "[t]he real party in interest is the person who possesses the right sought to be enforced." Peyton Bldg., LLC v. Niko's Gourmet, Inc., 180 Wn. App. 674, 680 (2014).

At the time the initial complaint was filed, on September 24, 2018, Dkt. # 1, the Bank appears to have "assign[ed] all of its interest" in the Judgment to Karma via a "Judgment Sale, Purchase and Assignment Agreement" ("Assignment Agreement"). See # 133-1 (reflecting that

---

the Bank's "Motion for Relief from Deadline for Joining Additional Parties." Id. The Bank offers the following inaccurate summary of the Court's conclusion: "But as this Court already stated the last time Plaintiffs raised this issue, the citizenship of non-parties, specifically including Karma, is irrelevant to the diversity jurisdiction analysis. See Dkt. # 71 at 5, n.3." Dkt. # 137 at 10. As the text of the relevant footnote and context demonstrate, however, the Court stated no such thing. Moreover, a fleshed-out diversity jurisdiction argument was not before the Court at the time.

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 8

the Assignment Agreement was entered into on May 23, 2017, but Mark Calvert's signature is missing from the document plaintiffs submitted). The Bank later entered into an Amendment to the Assignment Agreement with Karma on December 17, 2018, and this transferred ownership of the Judgment back to the Bank. Dkt. # 133-2 ("Karma re-assigns to the Bank Karma's ownership of the Judgment."). Ten days after this Amendment to the Assignment Agreement, the Bank filed an amended answer alleging fraudulent transfer counterclaims against plaintiffs and three additional parties: WN3, James Dean, and Frank Dean. Dkt. # 18.

Plaintiffs have two arguments regarding diversity jurisdiction over the Bank's counterclaims, though these arguments failed to fully materialize until plaintiffs' reply. Compare Dkt. # 132 with Dkt. # 138. The first argument applies to the Bank's fraudulent transfer counterclaims against plaintiffs, for which plaintiffs contend diversity jurisdiction does not lie because Karma was the real party in interest at the time plaintiffs filed their complaint. Dkt. # 138 at 8–10. The second argument applies to the Bank's fraudulent transfer counterclaims against the additional counterclaim defendants (WN3, James Dean, and Frank Dean),[7] for which plaintiffs assert that diversity jurisdiction does not lie because the Amendment to the Assignment Agreement was collusive.[8] Dkt. # 138 at 10–14.

As pertains to the Bank's fraudulent transfer counterclaims against plaintiffs, the Court is not persuaded by plaintiffs' argument that relies exclusively on the principle that diversity be

---

[7] While plaintiffs refer to the Bank's fraudulent transfer claims against WN3, James Dean, and Frank Dean as "Third-Party Claims," the Court has recognized these as counterclaims against counterclaim parties. Dkt. # 71 at 2 n.1.

[8] Plaintiffs acknowledge that "[w]hen a party files an amended pleading that joins new parties, the diversity between the party bringing the claim and the parties named as defendants as to the claim must exist at the time of the amendment," which indicates that there is diversity subject matter jurisdiction over the Bank's claims against WN3, James Dean, and Frank Dean, absent the Amendment to the Assignment Agreement being determined invalid. Dkt. # 138 at 11 (citing Lewis v. Lewis, 358 F.2d 495, 402 (9th Cir. 1966)).

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 9

1    determined at the time the complaint is filed. Dkt. # 138 at 9. Plaintiffs cite a case applying this

2    principle to counterclaims filed subsequent to a complaint, Dkt. # 138 at 8, but the case they rely

3    upon did not involve the "real party in interest" standard or assignment of claims. See Grail

4    Semiconductor, Inc. v. Stern, No. CV-1303687 SJO (AGRx), 2014 WL 12594162 (C.D. Cal.

5    Mar. 3, 2014). And a change in claim assignment can affect the status of the real party in

6    interest, even when the change does not occur until *after* the complaint has been filed. See Winn

7    v. Amerititle, Inc., 731 F. Supp. 2d 1093, 1099 (D. Idaho 2010) (permitting assignment of claim

8    to plaintiff who was not the real party in interest at the time he filed suit where the assignment

9    did not prejudice the defendant, and even before the assignment, plaintiff had a strong $100,000

10   monetary interest in the claim, and his involvement in the transaction provided him with

11   considerable interest in the claim); Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, 6A

12   Federal Practice and Procedure § 1545 (3d ed., April 2021 Update) ("There is no general

13   requirement as to when an assignment must be made and it has been held that even when the

14   claim is not assigned until after the action has been instituted, the assignee is the real party in

15   interest and can maintain the action."); 4 Moore's Federal Practice – Civil § 17.10 (2021)

16   ("[T]he circumstances on the date of filing do not control a determination of whether a person or

17   entity is the real party in interest."). Here, even at the time the complaint was filed, the Bank had

18   an interest in 50% of the first $750,000.00 in net proceeds recovered through collection efforts

19   on the Judgment, Dkt. # 133-1 at 3, and the Bank's historical involvement in trying to enforce

20   the Judgment against plaintiffs provided it with a legitimate interest in the claim. And when the

21   Bank actually filed its counterclaims in its Amended Answer, it owned the Judgment. Thus, per

22   the Amendment to the Assignment Agreement, the Bank appears to be the real party in interest

23   for purposes of the fraudulent transfer counterclaims against plaintiffs and counterclaim

24

25

26

27   ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
     TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
28   DISMISS DEFENDANT'S COUNTERCLAIMS - 10

1  defendants. If, however, the Amendment to the Assignment Agreement was improper or

2  collusive, the Bank's status as the real party in interest would be in jeopardy.

3  "When the issue of a collusive assignment is raised, the party asserting diversity has the

4  burden of showing the non-collusive nature of the assignment." W. Farm Credit Bank v.

5  Hamakua Sugar Co., 841 F. Supp. 976, 981 (D. Haw. 1994) (citing Dweck v. Japan CBM Corp.,

6  877 F.2d 790, 792 (9th Cir. 1989)). Because plaintiffs did not directly raise the issue of the

7  alleged collusive nature of the assignment amendment until their reply brief, however, the Bank

8  has not had sufficient opportunity to respond to this issue. The Court ultimately concludes that

9  supplemental jurisdiction exists over the fraudulent transfer counterclaims, for the reasons

10  discussed in the following section, and thus the Court need not further address the alleged

11  collusive nature of the Amendment to the Assignment Agreement.

12  **B.    Supplemental Jurisdiction**

13  Even when a federal court does not have independent jurisdiction to consider a

14  counterclaim, it may nonetheless have jurisdiction over the matter pursuant to 28 U.S.C. § 1367.

15  "[I]n any civil action of which the district courts have original jurisdiction, the district courts

16  shall have supplemental jurisdiction over all other claims that are so related to claims in the

17  action within such original jurisdiction that they form part of the same case or controversy." 28

18  U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a

19  'common nucleus of operative fact' with the federal claims and the state and federal claims

20  would normally be tried together." Bahrampour v. Lampert, 356 F.3d 969, 978 (9th Cir. 2004)

21  (quoting Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape

22  Maint., Inc., 333 F.3d 923, 925 (9th Cir. 2003)).

23  Plaintiffs argue that the Bank's fraudulent transfer claims have a different common

24  nucleus of operative fact from plaintiffs' Section 1983 claims. Plaintiffs characterize the

25  Section 1983 claim as involving the following operative facts: the Bank obtained a Washington

26

27  ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER

28  TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 11

Writ of Execution in 2018, the Bank utilized the Sheriff to force entry into the judgment debtors' and non-judgment debtor's home, where the Bank seized jointly owned property, and it also seized jointly owned stock held by non-judgment debtor plaintiff BGH. Dkt. # 132 at 8. Plaintiffs characterize the Bank's fraudulent transfer counterclaims, on the other hand, as involving facts that plaintiffs transferred the judgment debtor's property prior to the 2018 seizure. Id. The Bank frames the facts as sharing a common nucleus of operative fact "in that both claims are related to Dean's debt and the Bank's judgment against Dean." Dkt. # 137 at 13. The Bank also cites cases in this circuit concluding that supplemental jurisdiction applies when a defendant's counterclaims "bear a logical and factual relationship to [the plaintiff's] claims in that they are related to a single debt incurred by [the plaintiff]." Id. (quoting Sparrow v. Mazda Am. Credit, 385 F. Supp. 2d 1063, 1070 (E.D. Cal. 2005); citing Wilson v. Discover Bank, No. 3:12-CV-05209-RBL, 2012 WL 1899539, at *3 (W.D. Wash. May 24, 2012); Cousens v. Am. Honda Fin. Corp., No. 06-CV-2080 W (LSP), 2007 WL 9776765, at *2 (S.D. Cal. Feb. 5, 2007); In re Pinkstaff, 974 F.2d 113, 115-16 (9th Cir. 1992)). The Court agrees with the Bank. Although the fraudulent transfer counterclaims will involve additional facts regarding plaintiffs' alleged attempts to evade collection on the Judgment debt, they are logically connected to the Bank's actions undertaken to try and collect on that debt in 2018.

A court may nevertheless decline to exercise supplemental jurisdiction over state law claims under any of the following four circumstances:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 12

by the <u>Gibbs</u> values 'of economy, convenience, fairness, and comity.'" <u>Acri v. Varian Assocs.,</u>
<u>Inc.</u>, 114 F.3d 999, 1001 (9th Cir.), <u>supplemented</u>, 121 F.3d 714 (9th Cir. 1997), <u>as amended</u>
(Oct. 1, 1997). The only applicable condition plaintiffs raise is § 1367(c)(4),[9] and they contend
that "strong policy reasons . . . favor declining to exercise jurisdiction," citing a case involving
the Fair Debt Collection Practices Act ("FDCPA"): <u>Sparrow</u>, 385 F. Supp.2d at 1071. <u>Sparrow</u>
held that "to allow a debt collector defendant to seek to collect the debt in the federal action to
enforce the FDCPA might well have a chilling effect" whereby potential plaintiffs are deterred
from pursuing their rights under the FDCPA. <u>Id.</u> at 1071 (quoting <u>Leatherwood v. Universal</u>
<u>Bus. Serv. Co.</u>, 115 F.R.D. 48, 49 (W.D.N.Y. 1987)). Plaintiffs argue that their rights to be free
from unlawful search and seizure would be similarly chilled by permitting the fraudulent
transfer counterclaims to go forward in this action. Dkt. # 138 at 15–16. Where a creditor is
bringing a counterclaim not for an alleged debt, but rather to enforce a previously obtained
judgement, however, the concern about creating a forum for a "defendant to obtain a judgment
on the debt is inapplicable." <u>Brown v. Mandarich L. Grp., LLP</u>, No. 13-CV-04703-JSC, 2014
WL 2860631, at *2 (N.D. Cal. June 23, 2014). Here, a judgment on plaintiff Henry Dean's debt
already exists, and the Bank alleges that Dean has been evading collection. While plaintiffs

---

[9] The Bank's counterclaims do not present novel or complex issues of State law, 28 U.S.C.
§ 1367(c)(1), and the Court is not dismissing all claims over which it has original jurisdiction, 28 U.S.C.
§ 1367(c)(3). Additionally, the Court finds that the Bank's counterclaims do not substantially
predominate over plaintiffs' remaining Section 1983 claim. 28 U.S.C. § 1367(c)(2). At oral argument,
the Bank's counsel cited the following factual allegations in plaintiffs' complaint that directly relate to
the Bank's fraudulent transfer counterclaims: ¶ 3.39 (regarding use of the King County Sheriff to attach
and seize intangible property not belonging to Henry Dean, but belonging to BGH Holdings and Ms.
Atherton), ¶¶ 3.61–3.77 (regarding use of the King County Sheriff to seize HTP stock owned by BGH
Holdings, as well as Ms. Atherton and Mr. Dean's options to purchase stock in HTP). The Bank has
raised fraudulent transfer as an affirmative defense to plaintiffs' Section 1983 claim. Dkt. # 18 at 10–11,
¶¶ 6–7. Given that the Bank's fraudulent transfer counterclaims are based on the same facts as its
affirmative defense are, the counterclaims will not so substantially predominate as to justify the judicial
inefficiency that would result if this Court were to decline to exercise supplemental jurisdiction. <u>See,</u>
<u>e.g.</u>, <u>Competitive Techs. v. Fujitsu Ltd.</u>, 286 F. Supp. 2d 1118, 1143 (N.D. Cal. 2003).

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 13

allege that their property was unlawfully seized, if certain transfers of property were fraudulent, as the Bank alleges, this could affect the success of plaintiffs' claim accordingly. It would promote the values of judicial economy and convenience to exercise jurisdiction over the Bank's counterclaims, and it would relieve the Bank from filing a new claim in state court after the motions practice the parties have already pursued in this action. <u>See, e.g.</u>, Dkts. # 27, # 31, # 33, # 118, # 121. The Court concludes that it has supplemental jurisdiction over the Bank's fraudulent transfer counterclaims. Accordingly, plaintiffs' motion to dismiss the Bank's counterclaims for lack of subject matter jurisdiction (Dkt. # 132) is DENIED.

## IV.    CONCLUSION

For all the foregoing reasons, IT IS HEREBY ORDERED THAT:

(1)     Plaintiffs may proceed on their Section 1983 claim under the Fourth Amendment insofar as it pertains to defendant's alleged conduct during the entrance and search of plaintiffs' residence. All other causes of action alleged by plaintiffs are DISMISSED without prejudice for lack of jurisdiction.

(2)     Plaintiffs' motion to dismiss defendant's counterclaims for lack of subject matter jurisdiction (Dkt. # 132) is DENIED.

IT IS SO ORDERED.


DATED this 27th day of September, 2021.


Robert S. Lasnik
United States District Judge

ORDER REGARDING PLAINTIFFS' RESPONSE TO ORDER
TO SHOW CAUSE AND PLAINTIFFS' MOTION TO
DISMISS DEFENDANT'S COUNTERCLAIMS - 14